The Chief Justice delivered the opinion of the Court, after stating the case.
íIorublower, C. J.
Mr. Wilson moved to quash the certificate of the freeholders appointed to review the road in this case, *92 and that the return of the surveyors should be recorded, notwithstanding four of the freeholders had certified against the road. This motion was made on two grounds:
1st. Because a part of the freeholders appointed to review the road, were out of office at the time when they met to execute the duties assigned to them.
2d. Because it does not appear upon the face of their certificate, nor in any other way, that notice was given of the time and place of meeting according to law.

Mr. Scott, Contra.

By the Court.

The appointment of freeholders was made in the term of February last, and they were direoted to meet on the 25th of April then ensuing. In the counties of Middlesex and Essex, from -which counties, the freeholders were necessarily selected, the annual township meetings, were held on the second Monday in April, when in two instances, the former freeholders were left out, and new ones elected; nevertheless the persons who were freeholders, when the order was made, and who were designated by name, in that order, attended and acted in the premises. — Hence, the question arises; when do chosen freeholders go out of office? As soon as new ones are appointed at the annual town meetings; or not until the day designated by law, for the annual meeting of the new board ? By the statute, of the 18th February 1798, Rev. L. 317. the chosen freeholders of the several townships in the respective counties, are constituted bodies politic and corporate in the law: and by the 6th section of the same act, they are directed to meet annually on the second Wednesday in May. After the passing of that statute, some doubt seems to have been entertained, as to the duration of the term of office of the chosen freeholders: whereupon, the legislature by an act, entitled “ an act explaining the term of office, of the chosen freeholders &c.” passed in February 1819 (Rev. L. 655.) enacted that the powers and authorities granted to the several boards of freeholders, should continue until the organization of the new board at their annual meeting in May. Whatever doubt upon this subject might have existed prior to the act just cited, we should suppose none could now be entertained. It is nevertheless insisted at the bar, that the act of 1819, only continues *93 the corporate powers and authorities of the several boards, and not the official character and individual powers of the several persons who constitute those boards: that a person elected to the office of a chosen freeholder at an annual town meeting in April, commences his official term at that time and holds it only until the next annual town meeting: that he then ceases to be a tree-holder unless re-elected, and can thereafter execute none of the ordinary duties of a freeholder, as a township officer, though by force of the statute, of 1819, he is continued a constituent member of the corporation, until the new board is organized in May.
If this were so, we should frequently have the absurdity of two sets of freeholders in one township: From the annual town meetings, until the second Wednesday in May, the persons who had been elected to that office, the preceding year, would be freeholders for one purpose; namely, constituent members of the corporate board of freeholders; and the persons newly elected at the last town meeting, would be freeholders, for other purposes ; namely to review roads, and perform other local duties assigned to them by statute. This cannot be. Besides, the very title and object of the act of 1819, was to “ explain ” and settle “ the term of office” of the chosen freeholders — -and by it, they are to continue in office until the new board shall be organized, in May annually.
2d. As to notice of the time and place of meeting.
By the 9th section of the act concerning roads (Rev. L. 619) it is provided that notice to the freeholders, and public notice by advertisement of the time and place of meeting, shall be given in all respects, in the same manner, as is directed in the case of surveyors, in the second section of that act. But, it does not prescribe the mode in which, nor where, nor before whom, the service ol such notice shali be proved : Whereas in the case of surveyors, it is directed, by the fifth section, that due proof shall be made, to them, that advertisements of their meeting have been set up according to law; of which they shall decide, and that their decision shall be final and conclusive. The difference then is this, that in the case of surveyors, they have no power or jurisdiction, to proceed and lay out or alter or vacate a road, until they first enquire whether advertisements have been set up according to law, and adjudge that due proof has been made *94 thereof to them. Whereas in the case of freeholders, they may proceed and act, without such preliminary proof; and their report or certificate will be effectual, provided it can be shewn, whenever it is called in question, that public notice of the time and place of meeting, had been given according to law.
If the freeholders in this case had stated upon the face of their certificate, that such notice had been given, it might prima fade, at least, have been sufficient; but as they have not done so, we must require proof aliunde, before we can give effect to the certificate. It appears by certain affidavits taken before justices and sent'up here, that the meeting was duly advertised — but these affidavits are not referred to in the certificate, nor in any way connected with it; and being taken before justices of the peace, we cannot receive them as original proof. Nevertheless, as the return is just made to this court, it would be severe to reject the certificate of the freeholders, without allowing the party in whose favour it is, to supply the necessary proof. Let a rule therefore be entered calling on the party adverse to the road, to shew cause &c. with leave for both parties to take affidavits.
Ford and Ryerson, Justices, concurred.

Motion to quash, refused.

Cited in State v. Roe. 6 Vr. 124.